UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                          Bankruptcy No. 11-30227
                                                                Chapter 7
KRE, LLC,

                          Debtor.
_____/

## MEMORANDUM AND ORDER

Before the Court is Alerus Financial, N.A.'s (Alerus) motion for relief from the automatic

stay and a motion to dismiss filed on March 9, 2011. Debtor KRE, LLC (KRE) filed a response to

the motion for relief from stay on March 24, 2011 and a response to the motion to dismiss on March

30, 2011. A hearing was held on April 4, 2011.

## FINDINGS OF FACT

Debtor filed a Chapter 11 bankruptcy petition on March 8, 2011, listing two secured

creditors, including Alerus, and seven unsecured creditors. Alerus filed the motions at issue the

following day.

Edwin Yeh, chief executive officer of St. John's Capital Group (SJC) testified at the hearing.

Yeh testified that KRE was founded by Michael Marcil of Marcil Group, Inc. (Marcil Group) and

SJC in October or November 2008. When KRE was formed, Marcil Group was to own 51% of KRE

and SJC was to own the remaining 49%. Yeh testified that Marcil Group was expected to raise

capital and did not contribute financially to KRE as originally intended. SJC wholly provided the

funding invested in KRE. Yeh testified that although he was the chairman of the board of KRE, he

was not involved in any decision making. He was on the board because of the money that SJC

invested, and he was one of four or five board members.

KRE owns one piece of real property, a building on Main Avenue in Fargo, North Dakota.

The property is encumbered by a loan with Alerus. Yeh testified that Marcil Group originally managed KRE and the property. KRE leased the property to Knight's Printing. Yeh testified that under the lease agreement, Knight's Printing was responsible for making lease payments and paying the property taxes. In early 2010, Knight's Printing stopped doing business, closed its doors, and quit making its lease payments to KRE. Alerus' special credit officer, Brian Hunt, testified that the last loan payment by Alerus from KRE was in April 2010. Once KRE stopped making payments on the loan, Alerus initiated foreclosure on the property. When Marcil Group did not respond to the foreclosure action on behalf of KRE, SJC stepped in to defend KRE against the foreclosure action.

Yeh testified that during his first meeting with Hunt regarding loan modification, Alerus offered an interest-only plan for six months and required full payment on the loan at the conclusion of the six-month period. A loan modification agreement was not reached, and Alerus moved forward with foreclosure. Yeh testified that SJC did not have an opportunity to manage the property because Alerus hired Goldmark as the property manager. Yeh testified that local management of KRE is necessary, and SJC would not be opposed to continuing to utilize Goldmark, under SJC's supervision.

Yeh testified that Knight's Printing was responsible for payment of the property taxes and failed to pay them for almost three years. Yeh testified KRE initiated an action against Knight's Printing to recover delinquent lease payments and property taxes in the amount of $85,000.00.

The value of the property at issue is in dispute. Yeh testified that Alerus received an offer from Sanford Health to purchase the property for $500,000.00, prior to KRE's bankruptcy. Yeh testified he offered to purchase the property for $661,548.00. Yeh prepared the offer with consultation and itemized the problems associated with the building. One problem Yeh cited is that the building is not occupied, and filling the vacancy would require marketing and advertising. Next,

the building was constructed in 1945 and was specifically designed for a printing company. Yeh testified that a significant amount of money needs to be put into the building to make improvements to net a profit. He testified the property needs to be partitioned into four to six separate suites at a cost of $80,000.00 per suite. Total improvements will cost $400,00.00. Yeh testified he can raise the money and it will take 18 months for all the improvements to be completed. Yeh testified that one or two suites can be done at a time and rented out when each suite is completed. Yeh testified that in order for the building to have value, the building needs tenants, and to get tenants, renovations need to be made. Additional problems with the building that Yeh cited include: the out-of-date architecture, the lack of parking, and the lack of a single industrial tenant in the market because of zoning restrictions. Yeh also testified KRE is able to make monthly payments to Alerus of $3,400.00 immediately. Yeh further testified he has access to funding to pay Alerus $661,000.00 for the property, to make the improvements, and to pay the property taxes. Yeh suggested that the monthly payment to Alerus in the amount of $3,400.00, coupled with KRE's likelihood of success in the outstanding lawsuit against Knight's Printing would provide adequate protection.

Yeh testified that previous appraisals valued the property at $1,200,000.00 and $1,300,000.00. In his offer, SJC states the main cause of the disparity between the unpaid loan amount and SJC's analysis is misrepresentations by Marcil Group and Knight's Printing to both SJC and Alerus as to the value of the building.

Alerus estimates the value of the property at $1,600,000.00, and claims an appraised value of $1,800,000.00. Yeh testified he has not seen the appraisal and would like the opportunity to review it as well as Alerus' analysis. Yeh stated that review of Alerus' appraisal would assist in negotiating a deal. Yeh further testified there was not a sufficient amount of time to negotiate the large disparity between what the parties believe is fair. Yeh testified a bona fide cash buyer is

needed to determine the true value and he estimates the property probably would not generate more than $800,000.00 in bidding. Alerus did not provide an analysis or appraisal to Yeh.

A sheriff's sale was scheduled to be held on March 9, 2011, and Debtor filed for bankruptcy on March 8, 2011. Hunt testified debt to Alerus on the date of filing was $2,500,000.00. One year of back taxes will need to be paid in full plus penalty and interest this fall, and Alerus will force place insurance soon. Hunt testified the Salvation Army is occupying the building on a short-term lease. Hunt testified the only written offer they have received is from Yeh in the amount of $661,548.00. Alerus verbally countered with $1,600,000.00 to $1,800,000.00, but did not make a formal counter offer.

## CONCLUSIONS OF LAW

### 1.    Motion to Dismiss

Section 1112(b) of the Bankruptcy Code provides, in part, that on request of a party in interest and after notice and a hearing, the Court may dismiss a case if the movant establishes cause. Cause includes:

(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation;
(B) gross mismanagement of the estate;
(C) failure to maintain appropriate insurance that poses a risk to the estate or to the public;
(D) unauthorized use of cash collateral substantially harmful to 1 or more creditors;
(E) failure to comply with an order of the court;
(F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter;
(G) failure to attend the meeting of creditors convened under section 341(a) or an examination ordered under rule 2004 of the Federal Rules of Bankruptcy Procedure without good cause shown by the debtor;
(H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any);
(I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief;
(J) failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court;

4

(K) failure to pay any fees or charges required under chapter 123 of title 28;
(L) revocation of an order of confirmation under section 1144;
(M) inability to effectuate substantial consummation of a confirmed plan;
(N) material default by the debtor with respect to a confirmed plan;
(O) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan; and
(P) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1112(b)(4).

The majority of the factors that constitute cause are not applicable in this case due to the fact that Alerus filed its motion to dismiss the day following Debtor's bankruptcy filing. Alerus argues cause can be established under (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation; (B) gross mismanagement of the estate; or (D) unauthorized use of cash collateral substantially harmful to one or more creditors. See id.

In this case, there is a loss to the estate, because the property has not been occupied since the previous tenant went out of business and defaulted on its lease with Debtor. The property is specifically designed for a printing company, and in order for the property to be profitable, either another printing company needs to be secured as a tenant or the property needs improvements. Yeh testified that with improvements to the property, there is a reasonable likelihood of rehabilitation and the Court agrees.

As to the next basis for dismissal cited by Alerus, gross mismanagement of the estate, there is no evidence that Debtor mismanaged the property. It secured a tenant and that tenant later went out of business. It was the tenant's responsibility to pay the taxes on the property and it failed to do so. Although these facts caused Debtor to be unable to make the loan payment, there is no evidence that Debtors mismanaged the estate. There is also no evidence that there was any unauthorized use of cash collateral to substantially harm one or more creditors.

Alerus also asserts the case should be dismissed on the basis of bad faith. The list of grounds for dismissal outlined in section 1112(b) is not exclusive, and the Court may consider all of the circumstances of Debtor's situation to reach an equitable result. In re Wentworth, 83 B.R. 705, 707 (Bankr. D.N.D. 1988). There is an amalgam of factors the Court evaluates in making a determination if there is bad faith that warrants dismissal:

1. The debtor has few or no unsecured creditors;
2. There has been a previous bankruptcy petition by the debtor or a related entity;
3. The pre-petition conduct of the debtor has been improper;
4. The petition effectively allows the debtor to evade court orders;
5. There are few debts to non-moving creditors;
6. The petition was filed on the eve of foreclosure;
7. The foreclosed property is the sole or major asset of the debtor;
8. The debtor has no ongoing business or employees;
9. There is no possibility of reorganization;
10. The debtor's income is not sufficient to operate;
11. There was no pressure from non-moving creditors;
12. Reorganization essentially involves the resolution of a two party dispute;
13. A corporate debtor was formed and received title to its major assets immediately before the petition;
14. The debtor filed solely to create the automatic stay.

Id.

In this case, Debtor has seven unsecured creditors, and Debtor has not previously filed bankruptcy. Further, there is no evidence that the prepetition conduct of Debtor was improper. SJC stepped in when it became aware of the foreclosure. SJC attempted to negotiate with Alerus and simply ran out of time. Debtor's petition stopped the sheriff's sale, but the filing did not effectively allow Debtor to evade court orders. There are few debts to non-moving creditors, but those debts are substantial. The petition was filed on the eve of foreclosure, and the foreclosed property is the sole or major asset. Currently, Debtor does not have ongoing business or employees, however, this is a matter of circumstance due to the prior tenant going out of business. Further, Debtor has provided a list of problems with the property along with remedies to improve the property and to

6

once again regain business and employees. There was testimony that financing was available to make the necessary improvements and more than likely would increase the market value of the property. The evidence demonstrates there is a real possibility of reorganization. Once the improvements are made and a tenant is in place, Debtor's income may be sufficient to operate. There is no evidence as to whether there is pressure from non-moving creditors. In this case, reorganization involves more than a two-party dispute. There appears to be a dispute between KRE, Marcil Group, SJC, Knight's Printing, and Alerus. Reorganization does involve the dispute at hand, but is not the only issue. There is no evidence that a corporate debtor was formed and received title to its major assets immediately before the petition. Lastly, Debtor admits it filed the petition to create the automatic stay but did so in order to attempt to reorganize and had run out of time to negotiate. Although a few factors are present, after evaluating those factors and the circumstances that surround this case, the Court concludes that there is no bad faith by Debtor. Dismissal in this case is not warranted.

### 2.     Relief from the Automatic Stay

Section 362(d) of the Bankruptcy Code provides, in part, that on request of a party in interest and after notice and a hearing, the Court shall grant relief from stay:

(1)     for cause, including lack of adequate protection of an interest in property of such party in interest;

(2)     with respect to a stay of an act against property for lack of adequate protection of an interest in property if Debtor does not have an equity in such property and such property is not necessary to an effective reorganization.

Yeh testified KRE is able to make monthly payments to Alerus of $3,400.00 immediately. Yeh further testified he has access to funding to pay Alerus $661,000.00 for the property, to make

the improvements, and to pay the property taxes. Yeh suggested that the monthly payment to Alerus in the amount of $3,400.00, coupled with KRE's likelihood of success in the outstanding lawsuit against Knight's Printing would provide adequate protection. Therefore, the Court finds there is adequate protection for Alerus. The evidence demonstrates the property is necessary for an effective reorganization and that it is likely Debtor can effectively reorganize. Based upon the foregoing analysis, the Court finds the evidence supports Debtor's argument that lifting of the stay is not appropriate at this time. The Court has considered all other arguments and deems them to be without merit.

The Court, having considered all the filings, records and proceedings herein, **DENIES** Alerus Financial, N.A.'s motion for relief from the automatic stay and **DENIES** Alerus Financial, N.A.'s motion to dismiss.

**SO ORDERED.**

Dated this August 1, 2011.

WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT